UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JONATHAN JASON RODRIGUEZ, | Case No. 2:19-cv-00087-AR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| BRAD CAIN, et al., | |
| Defendants. | |

ARMISTEAD, Magistrate Judge:

*Introduction*

Plaintiff Jonathan Jason Rodriguez is an adult in the custody of Snake River Correctional Institution ("SCRI"). Compl. ¶ 3, ECF No. 2. Rodriguez, who is representing himself, brings this civil rights action under 42 U.S.C. § 1983, against nine Oregon Department of Corrections ("ODOC") officials employed at SCRI. *Id.* ¶¶ 4-14. He asserts numerous claims against the defendants "in their individual and official capacities," including violations of the First, Eighth, and Fourteenth Amendments. *Id.* ¶¶ 96-107.

Page 1 – OPINION AND ORDER

The defendants' motion for summary judgment is currently before the court. Def. Mot. for Summ. J. ("Def. Mot."), ECF No. 63. For the reasons set forth below, the motion is granted in part and denied in part.[1]

*Preliminary Procedural Matter*

After the defendants moved for summary judgment on May 24, 2021, the court issued the following notice to Rodriguez:

> The defendants have made a motion for summary judgment (Motion for Summary Judgment [63]) by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine dispute of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine dispute of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

Summ. J. Advice Notice, ECF No. 65. The court mailed Rodriguez this notice and directed him to respond to the motion by June 24, 2021. *Id.* After receiving three extensions of time, Rodriguez timely filed his response in opposition to summary judgment. Pl. Opp'n to Def. Mot. for Summ. J., ("Pl. Opp'n"), ECF No. 72.

---

[1] The parties have consented to jurisdiction by magistrate judge as permitted by 28 U.S.C. § 636(c)(1). *See* ECF No. 43.

Page 2 – OPINION AND ORDER

To support his opposition brief, Rodriguez submitted two declarations: one from himself and one from a fellow prisoner, Jesse Fanus. Decl. of Jonathan J. Rodriguez ("Rodriguez Decl.), ECF No. 73; Decl. of Jesse Fanus ("Fanus Decl."), ECF No. 74. Additionally, Rodriguez's Complaint is verified—it contains a sworn statement declaring, under penalty of perjury, the allegations therein are true and correct in accordance with 28 U.S.C. § 1746. Compl. at 28. Therefore, the court may consider the verified Complaint as an opposing affidavit under Rule 56, but only to the extent it expresses personal knowledge of admissible facts. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).

*Background*

I.   Parties

Rodriguez is an adult-in-custody ("AIC") at SRCI, a prison run by the ODOC. Decl. of James Taylor in Supp. of Def. Mot. for Summ. J. ("Taylor Decl.") ¶ 3, attach. 1, ECF No. 64. After entering ODOC custody in February 2016, Rodriguez was housed at SRCI from March 9, 2016, to March 14, 2018, when he was temporarily transferred to a prison in Pendleton, Oregon. *Id.* Rodriguez returned to SCRI on September 12, 2018. *Id.* His earliest tentative release date is July 29, 2024. *Id.*

Following incidents at SCRI in November and December 2018, Rodriguez filed this action on January 18, 2019.[2] *See* Compl. ¶¶ 4-14. He asserts civil rights claims against nine SCRI officials: (1) superintendent Brad Cain; (2) assistant superintendent Jason Bell; (3) special housing captain Thomas Jost; (4) special housing lieutenant Charles Anderson; (5) sergeant

---

[2] Rodriguez also unsuccessfully sought leave to file an amended complaint on three occasions. *See* Mots. to Amend, ECF Nos. 7, 12, 17. On October 1, 2020, the court denied these requests for noncompliance with Local Rule 15-1(d)(1). Order, ECF No. 24. Accordingly, his original complaint is the operative complaint in this action.

Page 3  – OPINION AND ORDER

Daniel Banner; (6) sergeant George Kautz; (7) corrections officer Nicholas Hansen; (8) corrections officer Nathan Main; and (9) hearings officer Frank Serrano. *Id.* For simplicity, the court will refer to defendants collectively or individually by their last names.

II.    Underlying Incidents, Grievances, and Related Claims

   A.    *November 20, 2018 – Alleged Assault (SCRI 139 and SCRI 009)*

Rodriguez alleges that, on the afternoon of November 20, 2018, he met with an Oregon State Police detective to discuss criminal activity that occurred while he was housed in Pendleton, Oregon. Compl. ¶¶ 15-22. Defendants Kautz and Hansen escorted Rodriguez to and from that meeting. *Id.* ¶ 17, 23-25. As they escorted him back to his cell, Rodriguez alleges that Kautz and Hansen became angry, threatened Rodriguez to keep his head facing forward, and "propelled [him] face first . . . into the edge of the steel doorframe" of his cell.[3] *Id.* ¶¶ 22-25; Rodriguez Decl. ¶ 2. Rodriguez alleges that, after he struck the doorframe, multiple officers pinned him to the ground with their full body weight and kicked, kneed, and elbowed him into submission. Compl. ¶¶ 26-28. Anderson was present, and Rodriguez alleges the incident was filmed. *Id.* ¶¶ 30, 34. Following that beating, Rodriguez was placed in a leg restraint chair and allegedly slammed into a wall as he was taken to an intake area, where he was stripped of most of his clothing and placed in a holding cell. *Id.* ¶¶ 40-42. There, two nurses checked on his injuries, and Rodriguez spoke with a behavioral health services counselor. *Id.* ¶¶ 44-50.

---

[3]    Defendant Kautz submitted an employee response to the grievance system describing this incident from his perspective. *See* Taylor Decl. ¶ 14, attach. 5, at 7-8. Although Kautz's response differs from Rodriguez's characterization of the incident, these disputed facts are immaterial to the two issues—exhaustion and qualified immunity—raised in defendants' summary judgment motion. For clarity, where an underlying fact appears disputed, the court couches that fact in terms of an "allegation" by either party.

Rodriguez alleges that, despite his requests, SCRI staff refused to photograph his injuries. *Id.* ¶¶ 57, 66, 79, 89.

After that incident, Rodriguez filed two grievances: SRCI 2018.11.139 ("SCRI 139") and SCRI 2018.12.009 ("SCRI 009").[4] Rodriguez filed this action on January 18, 2019, while his first-level appeals of SCRI 139 and SCRI 009 were still pending. *Id.* ¶¶ 20, 36. Based on these grievances, Rodriguez alleges that Kautz and Hansen used excessive force against him in violation of the Eighth Amendment by "repeatedly slamming him face first into the wall and doorframe." Compl. ¶¶ 97, 98. He also alleges that Anderson, Banner, Bell, and Cain violated his Eighth Amendment right to be free from excessive force by negligently failing to supervise and correct the actions of their subordinates. *Id.* ¶¶ 99-102.

B.      *November 20, 2018 – Return to Empty Cell (SCRI 003)*

Rodriguez alleges that, when he was returned to his cell the evening of November 20, 2018, he found that "everything except [his] mattress was taken." *Id.* ¶ 53. He also contends that Hansen had been "touching, playing with, and eating the food off of [his] dinner tray," and that, when Rodriguez asked for pain medication, Hanson stated he could get some from the supply cart the next afternoon. *Id.* ¶¶ 54-55. These allegations are supported by the declaration of another AIC, Jesse Fanus. Fanus Decl. ¶ 1-2. Fanus declares that he witnessed Officers Main and Hansen removing property from Rodriguez's cell, and that he saw "[H]ansen eating off one of

---

[4]     Rodriguez also attempted to file a grievance against the entire "HUSO response team" for use of "excessive and unnecessary force." *See* Taylor Decl. ¶ 29, attach. 9, at 19. The record reflects that this grievance was "combined into one incident" with SCRI 009. *Id.* (explaining Rodriguez cannot grieve the entire HUSO response team in a single grievance); *see also*, Compl. ¶ 93 (alleging he submitted five grievances based on incidents described in complaint).

Page 5  – OPINION AND ORDER

[Rodriguez's dinner] trays and sticking his fingers in the food." *Id.* ¶ 2. Fanus also states that he heard Hanson refuse Rodriguez's request for "tylenol." *Id.*

To protest this incident, Rodriguez filed SCRI 2018.12.003 ("SCRI 003") on November 28, 2018. Taylor Decl. ¶ 21, attach. 6, at 9. Based on that grievance, Rodriguez alleges that Hansen and Main violated his Fourteenth Amendment right to Due Process by emptying his cell of all possessions without warning. Compl. ¶¶ 103-104. He also alleges Hansen acted with deliberate indifference by intentionally denying him access to medical care in violation of the Eighth Amendment. *Id.* ¶ 105.

   C. *November 28, 2018 – Misconduct Hearing*

Following the events of November 20, 2018, Rodriguez received two misconduct charges. Compl. ¶¶ 56, 59. SCRI held a hearing on those charges on November 28, 2018, with defendant Serrano presiding as the hearing officer. *Id.* ¶ 58. At the hearing, Rodriguez denied the charges against him and asked Serrano to review "footage from the stationary cameras located in the housing unit, sallyport, hallways, and staff office area." *Id.* ¶ 61. Serrano declined this request, and Rodriguez was found guilty of the charges. *Id.* ¶ 63. As a result, Rodriguez alleges that he was issued a fine of $50.00 and 28 days loss of privileges. *Id.*; *see also* ODOC Loss of Privileges Sanction Order, ECF No. 2-2. Based on Serrano's refusal to review video evidence, Rodriguez asserts that Serrano denied him due process in violation of the Fourteenth Amendment. Compl. ¶ 106. There is no grievance associated with this claim because ODOC's Grievance Review System does not permit inmates to grieve "disciplinary hearings, findings and sanctions." *See* Taylor Decl. ¶ 9, attach. 2, at 5 (OAR 291-109-1040(3)(e)).

//

//

  D. *December 7, 2018 – "Rat" Comment (SCRI 055)*

Rodriguez alleges that, on December 7, 2018, he learned from another inmate that Captain Jost referred to Rodriguez as a "rat" because he was "dropping kytes"—AIC written communication forms—and filing grievances that were getting SCRI staff in trouble. *Id.* ¶ 90. Based on that information, Rodriguez submitted SCRI 2018.12.055 ("SCRI 055") on December 10, 2018. Taylor Decl. ¶ 37, attach. 10, at 8. In his complaint, Rodriguez alleges that Jost's comment constitutes unlawful retaliation against him for exercising his First Amendment rights to free speech. Compl. ¶ 107.

III. <u>Procedural History</u>

Rodriguez took various steps to exhaust his administrative grievances, and the court considers these efforts in greater detail below. Ultimately, however, Rodriguez opted to file his complaint on January 18, 2019, before he had exhausted the related grievances. *See* Comp. ¶ 95 (admitting he had not yet exhausted the administrative remedies available to him). In a motion for preliminary injunction, Rodriguez alleged that his decision to file this lawsuit before exhausting his administrative remedies was due to "the severity of ongoing issues and threats to [his] safety." *Id.*; Mot. for Prelim. Inj., ECF No. 20. The court considered and denied that motion, as well as two other requests for preliminary injunction in October and November 2020. Order, ECF Nos. 26, 28, 35. Following several months of discovery, defendants moved for summary judgment on May 24, 2021. Def. Mot., 16. Rodriguez opposes this motion.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F<small>ED</small>. R. C<small>IV</small>. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of

Page 7 – OPINION AND ORDER

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981). However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(C). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

*Discussion*

Defendants do not address the merits of Rodriguez's claims, but they contend summary judgment on all claims is proper because (I) Rodriguez failed to exhaust the underlying

grievances, and (II) to the extent Rodriguez sues defendants in their official capacities, the Eleventh Amendment bars his claims. *Id.* at 2.

Rodriguez concedes that he did not exhaust his grievances before filing this action, but he argues there is a genuine dispute as to whether his failure to exhaust should be excused. Pl. Opp'n, 16. The court agrees with Rodriguez, in part.

I.     Failure to Exhaust

In general, exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). To satisfy this requirement, an AIC must comply with the prison system's "critical procedural rules" and appeal the grievance to its highest level within that that system before filing a § 1983 action in court. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009); *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). Exhaustion is mandatory, however, only as long as "administrative remedies . . . are available." *Ross v. Blake*, 578 U.S. 632, 648 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted)

Failure to exhaust under the PLRA is an affirmative defense "that must be pled and proved by a defendant." *Id.* at 1168. The defendant bears the burden to prove that "there was an available administrative remedy, and the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner

Page 9 – OPINION AND ORDER

shows a failure to exhaust. *Id.* at 1166, 1172. When an AIC has not exhausted his administrative remedies, the court should dismiss the related claims without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1166. If a complaint contains both exhausted and unexhausted claims, the court should proceed with the exhausted claims. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

      As evidence of the administrative remedy available to Rodriguez, defendants submitted the declaration of James Taylor, a temporary Grievance Coordinator employed at SCRI. Taylor Decl. ¶ 1. The declaration explains that inmate grievances at SCRI are processed in accordance with the ODOC Administrative rules governing *Grievance Review System (Inmate)*, found in Chapter 291, Division 109 of the Oregon Administrative Rules ("OAR"). Taylor Decl. ¶ 6, attach. 2, at 7. Under those rules, "[i]f at any time the grievance coordinator determines the inmate has pursued his/her issue through state or federal courts . . . the grievance process will cease and the grievance will be returned to the inmate." OAR 291-109-0160.

      Defendants argue that Rodriguez's claims are barred under the PLRA because he failed to exhaust his administrative remedies before filing this action. Def. Mot., 2. Rodriguez does not dispute that he filed his complaint before exhausting his administrative remedies. *See* Compl. ¶ 95. Instead, he argues the court should excuse the exhaustion requirement because (1) an emergency required him to file this action before he fully exhausted SCRI 139 and SCRI 009; and (2) there is a genuine dispute that the grievance system was "effectively unavailable" to him for SCRI 003 and SCRI 055. Pl. Opp'n, 8, 11. The court is unpersuaded by Rodriguez's first argument but persuaded by his second.

//

//

A. *Rodriguez failed to exhaust SCRI 139 and SCRI 009*

The Supreme Court has expressly held that exhaustion under the PLRA is mandatory unless the pertinent administrative remedies are "unavailable." *Ross v. Blake*, 578 U.S. 632, 642 (2016). "[A]side from that exception, the PLRA's text suggest no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* at 639.

To explain why he filed this action before exhausting his administrative remedies, Rodriguez alleges that emergency circumstances, *i.e.*, "the severity of ongoing issues and threats to [his] safety" drove him to request preliminary injunctive relief. Compl. ¶ 95. However, in considering that requested relief, U.S. District Judge Karin J. Immergut concluded that Rodriguez "failed to establish that he currently faces the type of immediate and credible threat of irreparable harm necessary to justify extraordinary injunctive relief." Order, 4, ECF No. 26. Given Judge Immergut's Order, the court does not waive the exhaustion requirement based on the alleged emergency circumstances.

Additionally, Rodriguez has not presented any evidence to suggest that the grievance system was effectively unavailable to him for SCRI 139 and SCRI 009. Instead, the evidence demonstrates Rodriguez was able to fully pursue his administrative remedies for these grievances after he filed this action. In SCRI 139, Rodriguez describes how Kautz, Hansen, and other SCRI staff allegedly used excessive force against him while escorting him to his cell. Taylor Decl. ¶ 13, attach. 5, at 7. The record reflects that the grievance coordinator accepted this grievance and followed the review procedures set forth in OAR 291-109-0140. *Id.* Rodriguez was able to pursue SCRI 139 through first- and second-level appeals, and the grievance review process terminated on April 22, 2019, when the Eastside Institutions Administrator reviewed Rodriguez's second-level appeal. *Id.* ¶¶ 17-19, attach. 5, at 1. In SCRI 009, Rodriguez asserts

Page 11 – OPINION AND ORDER

that, rather than controlling his subordinates, Lieutenant Anderson "direct[ed] and encourag[ed] staff to assault" him on November 20, 2018. *Id.* ¶ 29, attach. 9, at 14-15. As with SCRI 139, the grievance coordinator accepted this grievance and followed the proper review procedures. *Id.* ¶ 30, attach 9, at 12. Rodriguez pursued SCRI 009 through a second-level appeal, and the review process terminated on February 13, 2019. *Id.* Because Rodriguez was able to pursue SCRI 139 and SCRI 009 through a second-level appeal, there is no dispute that the grievance system was available to him for these grievances. Thus, Rodriguez failed to properly exhaust SCRI 139 and SCRI 009 by filing this lawsuit before completing the grievance process. His related Eighth Amendment claims against Kautz, Hansen, Anderson, Banner, Bell, and Cain are dismissed without prejudice. *See* Compl. ¶¶ 97-102.

        B.      *The grievance system was "effectively unavailable" for SCRI 003 and SCRI 055*

Although exhaustion is generally mandatory under the PLRA, a court may waive the exhaustion requirement where there is a genuine dispute that the grievance system was "effectively unavailable" to the plaintiff. *Ross*, 578 U.S. at 639. The Supreme Court has identified circumstances where administrative remedies may be unavailable, including: (1) where an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative process is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644-45.

Rodriguez has presented sufficient evidence to raise a genuine dispute that, for grievance numbers SCRI 003 and SCRI 055, the grievance system was effectively unavailable to him.

//

1. SCRI 003

In SCRI 003, Rodriguez alleges that, when he returned to his cell on the evening of November 20, 2018, defendants Main and Hansen had removed all of his possession, and Hansen had "messed with" his food tray and refused his request for pain medication. Taylor Decl., ¶ 21, attach. 6, at 9. Rodriguez argues that the grievance system was effectively unavailable to him for SCRI 003 because he never received an employee response from the grievance coordinator. The court agrees.

When processing an inmate's grievance, the grievance coordinator is required to "send the inmate grievance and employee's . . . response to the inmate and retain copies for the file." *Id.* ¶ 7, attach 2, at 7 (OAR 291-109-0160). This step is important because, when appealing a grievance, the inmate must submit "the original grievance, attachments, and staff response(s)" with the appeal form. *Id.* ¶ 10, attach. 2, at 8 (OAR 291-109-0170).

Here, the grievance coordinator's accepted SCRI 003 on December 4, 2018, and issued a notice stating that the grievance was sent for response. *Id.* ¶ 22, attach. 6, at 8. The online system used to track grievances reflects that the office received a response from Anderson on December 26, 2018. *Id.* at 7. However, a copy of the response was neither scanned into the system nor apparently sent to Rodriguez. *Id.* at 7, 10. On January 20, 2019, Rodriguez inquired why he had not received a response for SCRI 003. *Id.* ¶ 21, attach. 6, at 10. The grievance coordinator replied that Rodriguez had "no overdue responses" in the system. *Id.* After receiving that reply, Rodriguez attempted to file a first-level appeal, explaining on the appeal form that, because he had not received an employee response despite his inquiries, he was treating the nonresponse as a denial of his grievance. *Id.* ¶ 25, attach. 6, at 7. His appeal was denied. *Id.* In the accompanying notice, the grievance coordinator explained that Rodriguez's appeal was deficient because it

Page 13 – OPINION AND ORDER

failed to include the original employee response and was not filed "within 14 days" after Rodriguez allegedly received that response. *Id.* at 6. Rodriguez resubmitted his firs- level appeal, explaining that he could not comply with those rules because he had not received an employee response. *Id.* ¶ 26, attach. 6, at 5. His appeal was denied on the same grounds. *Id.* Rodriguez attempted to file a second-level appeal on July 10, 2019, which was again denied for failure to attach the related staff response. *Id.* ¶ 27, attach. 6, at 1-2.

The evidence presented by both parties shows that, with respect to SCRI 003, the grievance system was effectively unavailable to Rodriguez. Through no fault of his own and despite his inquires, Rodriguez did not receive a copy of a staff response to this grievance, as required by OAR 291-109-0160. Because he did not receive a response, he was unable to successfully appeal SCRI 003, and the grievance system operated as a "simple dead end." Accordingly, the court finds cause to waive the exhaustion requirement for SCRI 003 and its associated claims for relief. Rodriguez's associated claims—his Fourteenth Amendment Due Process claim against Hansen and Main and his Eighth Amendment deliberate indifference claim against Hansen—survive defendants' exhaustion argument. *See* Comp. ¶¶ 103-105.

    2.    SCRI 055

In SCRI 055, Rodriguez alleges that he "received information [that] Special Housing Captain Jost is slandering my name [by] calling me a 'rat' for grieving" the incidents of November 20, 2018. Taylor Decl. ¶ 37, attach. 10, at 8. Rodriguez argues that there is a genuine dispute that the grievance system was effectively unavailable to him for SCRI 055 because the grievance officers mischaracterized and wrongly refused to process his grievance. Pl. Opp'n, 18. The court agrees.

The grievance coordinator's office received SCRI 055 on December 10, 2018, but it denied the grievance and returned it to Rodriguez two days later. In the notice accompanying that denial, the grievance coordinator explained that SCRI 055 was deficient because Rodriguez was "[n]ot directly involved in the incident" and failed to demonstrate "unprofessional conduct or error that has affected [him]." *Id.* at 7. Rodriguez attempted to resubmit SCRI 055, explaining that the incident did "involve him" because the conversation was about him and a "subtle attack on [his] right to seek redress." *Id.* He also requested that the grievance coordinator provide a fuller explanation if the grievance was again denied. *Id.* Soon after, his grievance was denied for the same stated reasons. *Id.* at 4. Similarly, when Rodriguez attempted to appeal the grievance, his appeal was denied on the grounds that inmates "[c]annot appeal a denied grievance." *Id.* ¶ 38, attach. 10, at 1.

Viewing this evidence in the light most favorable to Rodriguez, there is a genuine dispute of material fact that prison officials misrepresented and improperly denied SCRI 055. As an initial matter, the court is not persuaded that Rodriguez "lacked direct involvement" in the incident, such that denial of the grievance was proper. Under the Grievance Review System, an inmate may file a grievance regarding a number of matters, including "[a]ny unprofessional behavior or action which may be directed toward an inmate by an employee." *Id.* ¶ 7, attach 2, at 4 (OAR 291-109-0140(2)(c)). Here, Jost's alleged comment referring to Rodriguez as a "rat" to another inmate arguably constitutes such unprofessional behavior. Moreover, while Jost was not speaking to Rodriguez, his comment was "directed toward" Rodriguez, both in reference and potential consequences. Thus, there is a genuine dispute of material fact that SCRI 055 was improperly denied. This denial operated as a "simple dead end" that rendered the grievance

system effectively unavailable for SCRI 055; therefore, Rodriguez's First Amendment retaliation claim against Jost survives defendants' exhaustion argument.

II.     Eleventh Amendment

As alternative grounds for summary judgment, defendants argue that, to the extent Rodriguez's remaining claims target each defendant in his official capacity, the claims are barred by the Eleventh Amendment. Def. Mot., 14. Rodriguez does not respond to this argument, except to note that he also asserts each claim against defendants in their individual capacities. Pl. Opp'n, 6. There is not a genuine dispute of material fact on this issue.

In the absence of consent by the state or express abrogation by Congress, the Eleventh Amendment bars all suits brought in federal court against states and their agencies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 53-54 (1996). Because a suit against a state official in his official capacity is a suit against the official's office, state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64-66 (1989).

Accordingly, to the extent Rodriguez seeks monetary damages from each defendant in his official capacity, the Eleventh Amendment bars his claims. Rodriguez's remaining claims survive only to the extent that each is directed at Hansen, Main, Jost, or Serrano in their individual capacities.

III.    Remaining Claims

Based on the foregoing discussion, the following claims survive defendants' motion for summary judgment:

//

>    (1) a Fourteenth Amendment claim against Hansen and Main, in their individual capacities, for "depriving [Rodriguez] of due process when [they] allegedly removed all of [his] property outside of his cell" on November 20, 2018. *See* Compl. ¶¶ 103-104.
>
>    (2) an Eighth Amendment deliberate indifference claim against Hansen, in his individual capacity, for "intentionally denying [Rodriguez] access to the most basic medical care" on November 20, 2018, when Hansen refused Rodriguez's request for pain relief medication. *See Id.* ¶ 105.
>
>    (3) a First Amendment retaliation claim against Jost, in his individual capacity, for "indirectly threatening" Rodriguez by referring to him as a "rat" to another inmate, after Rodriguez had filed several grievances about the incidents of November 20, 2018. *Id.* ¶ 107.
>
>    (4) a Fourteenth Amendment claim against Serrano, in his individual capacity, for depriving Rodriguez of due process at the hearing on November 28, 2018, when he "refused to obtain video evidence and investigate the rule violations" with which Rodriguez had been charged. *Id.* ¶ 106.

In their motion for summary judgment, defendants neither addressed the merits of these claims nor reserved any right to brief those merits. *See generally*, Def. Mot. The court notes that it expects defendants to address the merits or to reserve that right if they reasonably anticipate the need to brief the merits of any remaining claims. Nevertheless, to conserve judicial resources, the court directs the parties to file supplemental briefing to address the merits and evidence underlying these remaining claims. *See Portsmouth Square Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 869 (discussing that, in the absence of a formal motion, the court may grant summary judgment *sua sponte* if the parties have notice and an opportunity to respond); *see also Celotex Corp.*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence."). The parties are directed to file briefing on the merits of Rodriguez's remaining claims, as stated below.

Page 17 – OPINION AND ORDER

*Conclusion*

Defendants' motion for summary judgment (ECF No. 63) is GRANTED IN PART and DENIED IN PART, as stated in this opinion. Defendants are directed to file a supplemental brief addressing the merits of Rodriguez's surviving claims within 30 days of this Opinion and Order. Rodriguez is directed to file a response in opposition 30 days thereafter.

IT IS SO ORDERED.

DATED May 17, 2022.

                                             _____
                                             JEFFREY ARMISTEAD
                                             United States Magistrate Judge